IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TOPIA TECHNOLOGY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 21-1821-CJB |
| ) | |
| EGNYTE, INC., ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM ORDER

Pending before the Court in this patent infringement case is Plaintiff Topia Technology, Inc.'s ("Plaintiff" or "Topia") motion to amend the Complaint ("Motion") to add additional allegations relating to two of the original six patents-in-suit—United States Patent Nos. 9,143,561 (the "'561 patent") and 10,067,942 (the "'942 patent," and together with the '561 patent, the "patents at issue"). (D.I. 69) For the reasons set out below, the Motion is GRANTED.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed the Complaint in this case on December 27, 2021, in which it asserted that Defendant Egnyte, Inc. ("Defendant" or "Egnyte") infringed the two patents at issue as well as four additional patents: United States Patent Nos. 10,289,607, 10,642,787, 10,754,823 and 11,003,622 (the "four additional patents-in-suit"). (D.I. 1)[1] Defendant thereafter filed a motion for judgment on the pleadings (the "MJP"), (D.I. 39); with the MJP, Defendant argued that each of the original six patents-in-suit are directed to non-patent-eligible subject matter pursuant to 35 U.S.C. § 101 ("Section 101"). At a hearing held on December 20, 2022 (the "December 2022

---

[1]      The parties consented to the Court's jurisdiction to conduct all proceedings in the case on March 17, 2022. (D.I. 19)

hearing"), the Court read its decision orally, explaining why it was granting-in-part and denying-in-part the MJP. (D.I. 68) The Court found that, based on the record before it, the two patents at issue were directed to patent-ineligible subject matter; it granted the MJP as to those patents. (*Id*. at 221) As to the four additional patents-in-suit, the Court denied the MJP. (*Id*.) The Court then permitted Plaintiff the opportunity to seek to amend its Complaint in order to try to plausibly allege that, at step two of the *Alice* eligibility analysis, the claims of the patents at issue include an inventive concept. (*Id*. at 221-22) Thereafter, on March 31, 2023, the Court issued a written version of the decision it had provided orally during the December 2022 hearing (the "March 31, 2023 opinion"). (D.I. 91) In the March 31, 2023 opinion, the Court simply memorialized in writing what it had said at the December 2022 hearing (while also correcting transcription errors and adding supporting footnotes where appropriate). (*Id*.)[2]

Plaintiff's Motion was filed on January 20, 2023. (D.I. 69)[3] The Motion was fully briefed as of February 15, 2023. (D.I. 82)

The parties are well familiar with the record and they desire a timely decision on the Motion. In light of that, the Court will not set out herein all of the relevant facts regarding the Motion or the two patents at issue. Instead, the Court will assume familiarity with the March 31,

---

[2] In a recent filing, Defendant stated its view that the Court's March 31, 2023 opinion was intended to do more than simply restate the ruling the Court had made at the December 2022 hearing. (D.I. 104) Since the March 31, 2023 opinion was issued after briefing for the instant Motion had concluded, Defendant suggested that in issuing the March 31, 2023 opinion, the Court meant to *also* deny the instant Motion—and thus to conclude that any amendment of the Complaint as to the two patents at issue was inappropriate. (*Id*. at 1) Defendant is wrong. As the Court stated at the December 2022 hearing, (D.I. 68 at 224), and as it reiterated in the March 31, 2023 opinion, (D.I. 91 at 1), the March 31, 2023 opinion was simply meant to memorialize in writing what the Court had decided at the hearing, nothing more.

[3] The Motion attaches a proposed Amended Complaint (which contains the new allegations) as Exhibit A to the Motion. (D.I. 70, ex. A)

2023 opinion. *See Topia Tech., Inc. v. Egnyte, Inc.*, Civil Action No. 21-1821-CJB, 2023 WL 2734607 (D. Del. Mar. 31, 2023). And to the extent that additional facts are relevant to the Motion, the Court will set out those in Section III below.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) declares that leave to amend shall be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court of the United States has explained that this mandate "is to be heeded" and that in the "absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation omitted).

In opposing the Motion, Defendant primarily relies on its claim that granting the Motion would be a futile act. This is assertedly because even taking into account the new allegations in the proposed Amended Complaint, Plaintiff cannot plausibly allege that the patents at issue are patent eligible. (D.I. 78) In assessing futility with regard to a motion to amend, the Court "applies the same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6)." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).

## III.    DISCUSSION

In its March 31, 2023 opinion, as to the two patents at issue, the Court ruled that: (1) at step one of the *Alice* test for eligibility, the record demonstrated that the representative claims of the patents were directed to the abstract idea put forward by Defendant: "synchronizing multiple

3

versions of [a] file across network computers"; and (2) Plaintiff had not plausibly demonstrated that, at step two of the analysis, the claims otherwise contained an inventive concept, sufficient to withstand dismissal. (D.I. 91 at 4-13) In its step two analysis, the Court further explained that it was "hard to see what more there is in [representative] claim 1 of [the '561 patent] beyond" the abstract idea because "[a]ll or nearly all of the claim's language seems to be focused on the general concept of automatically transferring modified electronic files between network devices." (*Id.* at 8) The Court also noted that Plaintiff "did not add allegations to its [C]omplaint that address[] the [Section] 101 question at [s]tep [two] in a manner that might suggest otherwise." (*Id.*) And with regard to representative claim 5 of the '942 patent, which is similar to claim 1 of the '561 patent (with the exception of the addition of certain "determining" steps),[4] the Court noted that Plaintiff did not make any arguments at step two that were specific to the determining steps.

With the instant Motion, Plaintiff focuses on step two of the *Alice* framework.[5] There Plaintiff asserts that in the Amended Complaint, it has added allegations that plausibly indicate patent eligibility. (D.I. 70 at 2 ("The Complaint is amended to recite factual allegations that

---

[4] These "determining" steps cause the claimed system to determine whether or not two electronic devices are in communication with each other before sending modified electronic files from one device to another. ('942 patent, col. 11:3-4, 19-20, 59-63)

[5] In a footnote in its opening brief, Plaintiff also suggests that the Court wrongly concluded at *Alice*'s step one that "synchronizing multiple versions of [a] file across network computers" is in fact an abstract idea. (D.I. 70 at 2) This is not an argument that Plaintiff made in opposing the MJP (instead there, at step one, Plaintiff had contended only that the claims at issue were *not directed to* this abstract idea). (D.I. 91 at 4, 11-12; D.I. 45 at 2-3; D.I. 68 at 119) And in its briefing, Plaintiff does not explain this argument well. In any event, assertions like this one—i.e., made solely in a footnote but not squarely argued—are deemed waived. *Celadon Holdings, LLC v. Jaguar Trans., Inc.*, Civil Action No. 22-567-GBW, 2023 WL 3224500, at *5 (D. Del. May 3, 2023) (citation omitted).

illustrate how the claims of the [two patents at issue] recite an inventive concept that is significantly more than an abstract idea.")) The Amended Complaint also incorporates by reference and liberally cites to a declaration of Plaintiff's expert, Dr. Prashant Shenoy. (*See, e.g.*, *id.*, ex. A; *id.*, ex. 8)[6] With these filings, Plaintiff makes at least two types of assertions that are relevant to the Court's step two analysis.[7]

First, the Amended Complaint and Dr. Shenoy's declaration point out that while prior art file transfer systems required a user's device to "always be connected to a server" in order to obtain and store an updated version of modified electronic files, here the claimed systems "work in concert to ensure that, when the user modifies a file on one of the devices[,] . . . applications, *local to the user's devices*, then replace an earlier version of the file *on each of the user's devices*." (D.I. 70 at 3 (emphasis added); *see also id.* at 3-4; *id.*, ex. A at ¶ 25; *id.*, ex. 8 at ¶ 27) In other words, Plaintiff asserts that one aspect of the inventive concept purportedly set out in the

---

[6] The Court will therefore also consider Dr. Shenoy's declaration in assessing the Motion.

[7] In its briefing, Plaintiff seems to make at least one other assertion about eligibility at step two—but one that is not particularly helpful to it. There Plaintiff states that "the Amended Complaint sets forth facts that show how the claims go beyond solving the problems of *manually* synchronizing files by addressing problems with the computerized systems of the day for synchronizing files, such as remote desktop, distributed file, and FTP based systems." (D.I. 70 at 3 (emphasis added)) It is true, as the Court noted in the March 31, 2023 opinion, that the patents' specifications at times emphasize how certain prior art systems (such as FTP or e-mail) were problematic because they relied in part on "manual[]" efforts by users, whereas the claimed systems *automatically* effect synchronized file transfer. (D.I. 91 at 6-7 (citing '561 patent, cols. 2:10-3:34); *see also* D.I. 70 at 3 (Plaintiff emphasizing how the inventions "automatically transfer[]" modified files to each user's device)) However, as the Court noted in the March 31, 2023 opinion, when claims simply seek to automate an otherwise manual methodology in order to conserve human resources and minimize errors, that automation-type "add" cannot render the claims patent eligible. (D.I. 91 at 7 (citing *Univ. of Fla. Research Found., Inc. v. General Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019)) So nothing about the fact that the claims at issue automate a formerly manual process will be helpful to Plaintiff in staving off dismissal of the two patents at issue here.

5

claims is that the systems have "a local application transfer the file through a server to the user's other devices" and "stor[e] the modified file locally on each of the user's devices"; this contrasts with prior art "server centric" systems that required the "files to be stored at the server and accessed from the server[,]" necessitating much greater computational complexity and occasionally slow wait times. (D.I. 70, ex. A at ¶ 25; *see also id.*, ex. 8 at ¶¶ 26-28) This "local device/not-server-based" concept does appear to be captured by the claims, in that the claims use "application[s]" found on various user's "electronic device[s]" (i.e., the "second electronic device" and "third electronic device" that are associated with a user) to send and receive copies of modified files, and to store updated copies of those files on each such device. ('561 patent, cols. 10:47-11:9; '942 patent, cols. 10:60-11:45, 11:59-63) And it also appears that, at times, the patent specifications criticize certain prior art file distribution systems (like remote desktop or distributed file systems) for failing to "use the resources of a local machine" or for needing to rely on an "always-connected host machine" in order to get access to files (as opposed to having those files reside on a "local machine"). (*See* '561 patent, col. 2:10-43)

  Second, the Amended Complaint and Dr. Shenoy's declaration state that another aspect of the claimed inventive concept is that "the claims refer to the application transferring *the file itself*"—in contrast with a prior art approach known as "delta synch" that required a determination of "specifically what content in the file ha[d] been modified" and then transferred "only a *portion of the file*" (i.e., only the specific file content that a user had changed). (D.I. 70 at 4 (emphasis added); *see also id.*, ex. A at ¶ 16; *id.*, ex. 8 at ¶ 32) According to the Amended Complaint and to Dr. Shenoy, systems that performed "delta synch" would upload only "difference information" regarding the file's content, and this process had several technological disadvantages—including "computationally heavy costs, and lack of support for compressed and

6

encrypted files." (D.I. 70, ex. A at ¶ 16; *id*., ex. 8 at ¶¶ 29-32)  And here again, the claims do seem to capture this concept, in that they speak in terms of transferring an entire modified "file" or "file copy[,]" not simply a portion of that file.  ('561 patent, cols. 10:47-11:9; '942 patent, cols. 10:60-11:45, 11:59-63)

      What is frustrating for the Court, of course, is that in its briefing on the prior MJP, Plaintiff did not provide a very clear articulation of the import of the "local device/not-server-based" concept or the "transmit a whole file, not a portion thereof" concept.  (D.I. 45)  At a minimum, in that briefing, Plaintiff certainly did not highlight the significance of these asserted inventive concepts to the same degree that it does now.  (*Id*.)[8]

      Nevertheless, a much clearer discussion of these purportedly inventive concepts is *now* included in the Amended Complaint (and in Dr. Shenoy's expert declaration, referenced therein).  Moreover, as the Court noted above, the representative claims of the two patents at issue do seem to align with these two inventive concepts.  And the presence of these inventive concepts also seems to render the claims more particularized than the abstract idea at issue—in that when one takes the concepts into account, the representative claims can be said to no longer be broadly about "synchronizing multiple versions of a file across network computers."  Instead, the claims arguably describe a system that promotes a more *specific way* to synchronize such files across network computers (i.e., by utilizing applications and storing modified documents on a *local device and not a server*, and by transferring *entire files* and not simply the *modified portions of*

---

[8]    Plaintiff's counsel did make somewhat clearer reference to these concepts a few times in the December 2022 hearing, (*see* D.I. 68 at 122-23, 136, 140), though again, not in anywhere near the depth that Plaintiff now discusses them in the briefing related to the instant Motion.

*those files*).  This is enough to raise a factual dispute at step two about patent eligibility, sufficient to render the filing of the Amended Complaint a non-futile act.[9]

In opposing the Motion, Defendant primarily focuses on the fact that the representative claims do not say much if anything, for example, about *how* the systems' applications are programmed to transfer or receive modified files, or *how* modified files are to be stored on local devices.  (D.I. 78 at 3; *see also id*. at 4 (Defendant faulting the claims for failing to detail "*how* [the claimed systems] underlying technical architecture is structured") (emphasis in original))  And it is true, the claims do not provide much that speaks to this additional level of "how."  But as the Court has noted above, the claims *do* seem to provide at least one level of "how"—in that they describe a particular way that the systems "synchronize multiple versions of a file across network computers":  that is, the systems do so by using applications contained on local devices (not on servers), by storing the modified content on local devices (not on servers) and by transferring entire files (not simply the modified portions thereof).  In this way, there is enough "how" in the claims to enable Plaintiff to plausibly assert that the patents do not "preempt all ways" of utilizing the abstract idea.  (*Id.* at 5; *see also* D.I. 82 at 3 (Plaintiff noting that the patent and the Amended Complaint describe other ways of synchronizing multiple versions of a file across network computers—such as via FTP and distributed file systems that rely on servers in ways that the claims at issue do not, or via systems that utilize the "delta synch" technique, which transfer only a portion of modified files) (citing '561 patent, col. 2:8-59))  And as the

---

[9] Alleged inventive concepts that are described in a party's complaint can defeat a motion to dismiss filed on Section 101 grounds, so long as the complaint's allegations are not "wholly divorced from the claims or the specification[.]"  *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019) (citation omitted).  Relatedly, "[a]s long as what makes the claims inventive is recited by the claims, the specification need not expressly list all the reasons why this claimed structure is unconventional."  *Id*.

Court has previously explained, so long as (1) there is a plausible allegation that the claims of a patent are more particularized than or more specific than the asserted abstract idea at issue, and (2) the record suggests that this additional particularly/specificity might relate to the unconventional use of computer technology, then (3) the United States Court of Appeals for the Federal Circuit has not always required that the claims otherwise contain great detail about exactly *how* the accused systems work, in order to survive a Section 101 challenge at the pleading stage. *See Nielsen Co. (US), LLC v. TVision Insights, Inc.*, Civil Action No. 21-1592-CJB, 2022 WL 3226318, at *5 (D. Del. Aug. 10, 2022) (discussing *Thales Visionix Inc. v. United States*, 850 F.3d 1343 (Fed. Cir. 2017)).[10] If Defendant's chief complaint is that the patents do not say enough about how the claimed systems transfer or store the files at issue, "that sounds to the Court more like a Section 112 problem, not a Section 101 problem." *Id.*

### IV. CONCLUSION

For the reasons set out above, the Court cannot conclude that the proposed Amended Complaint is futile.[11] Therefore, the Motion is GRANTED. By no later than **July 11, 2023**, Plaintiff shall file its Amended Complaint on the docket as a stand-alone filing.

---

[10] *See also BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1345, 1348-51 (Fed. Cir. 2016) (finding that a district court wrongly granted dismissal at the Rule 12 stage on Section 101 grounds, wherein at step two the claimed system contained an inventive concept of "install[ing ]a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user[,]" such that it was plausible that the claims were not simply directed to the abstract idea of "filtering content on the Internet[,]" and doing so even though, for example, the claims did not further specify *how* a service provider associated the filtering features with each user's network account).

[11] Although the thrust of Defendant's opposition to the Motion relates to futility, in one sentence of its answering brief, Defendant makes a brief argument about undue prejudice. (D.I. 78 at 4) There, it notes that in the Amended Complaint, Plaintiff deleted an allegation about the '561 patent that had been found in paragraph 12 of the original Complaint: that the patent "is generally directed to systems and methods for sharing electronic files between multiple devices, wherein when a user modifies an electronic file on a device, a copy of the modified

Dated:  July 6, 2023

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

electronic file is automatically transferred . . .'' (*Id.* (quoting D.I. 1 at ¶ 12))  In its ruling on the MJP, the Court had relied in part on this allegation in the Complaint, noting that there was not "much daylight" between that articulation of what the patent was directed to and the asserted abstract idea of "synchronizing multiple versions of [a] file across network computers[.]"  (D.I. 91 at 7-8)  But the Court does not see how Plaintiff's deletion of the prior paragraph 12 amounts to undue prejudice.  That is because in the instant opinion, the Court is again concluding that the claims of the respective patents are directed to the asserted abstract idea at issue (as was suggested by the now-deleted former paragraph 12).  And as Defendant noted, (D.I. 78 at 4), the Amended Complaint still includes a similar allegation about what the '942 patent is directed to, (D.I. 70, ex. A at ¶ 44).  In the end, the key question here is not whether the '561 patent and the '942 patent are directed to the asserted abstract idea for purposes of *Alice*'s step one.  Instead, it is whether at *Alice*'s step two, Plaintiff has plausibly asserted that the claims of the patents nevertheless contain an inventive concept.  Based on the newly-developed record, the Court concludes that Plaintiff's assertion in this regard is now plausible.