# Fisher Broyles

**Carl D. Neff**
Partner
Carl.Neff@FisherBroyles.com
Direct: 302.482.4244
CSC Station
112 S. French Street
Wilmington, DE 19801
www.FisherBroyles.com

December 20, 2023

**VIA CM/ECF**
The Honorable Christopher J. Burke, U.S.M.J.
J. Caleb Boggs Federal Building
844 N. King Street, Unit 28, Room 2325
Wilmington, DE 19801-3555

Re:   *Topia Technology, Inc. v. Egnyte, Inc.*, Case No. 1:21-cv-01821-CJB

Dear Judge Burke:

This letter is submitted to the Court pursuant to the Court's Order (D.I. 193).

**Issue One:** Egnyte has produced all relevant and responsive financial documents reasonably requested by Topia through discovery given the facts of this case. Egnyte has produced to Topia thousands of pages of marketing and advertising documents; the revenue (ARR), cost of goods, gross margins, operating expenses, operation income, losses, and net losses for the accused products on a per year basis going back to 2015; and all licensing and royalty agreements in its possession.

Despite this, Topia makes numerous false statements to this Court. First, Topia falsely alleges that Egnyte's attorneys have a duty to explain Egnyte's documents to Topia's attorneys. This is improper. Egnyte's attorneys are not fact witnesses for Egnyte. If Topia wants to understand the produced financial documents, then it should have taken a deposition of Egnyte's fact witnesses during the fact discovery period. Instead of doing this, Topia's attorneys posed questions to Egnyte's attorneys via e-mail, which is improper. If Topia has questions about what documents mean, what accused products are included or not included in which entry, what actions Egnyte took to obtain documents, or anything else factual about this case, then Topia should ask those questions *of the fact witnesses of Egnyte*, and not Egnyte's attorneys.[1] To be clear, Egnyte has produced to Topia all relevant financial information it needs for this case. Topia's attorneys' failure to understand these documents is the fault of Topia's attorneys for not deposing Egnyte's fact witnesses during the fact discovery period.

Second, Topia has mischaracterized the produced documents to the Court. For example, Topia states that it wants "sales, profits, or market share on a monthly and quarterly basis" but admits that such information has been provided by Egnyte to Topia on a yearly basis. *See* Exhibits 10-11. Topia fails to explain why yearly information is insufficient, or why it must have this information on a monthly and quarterly basis. Topia next requests overall "projected sales, profits,

---

[1] Egnyte's attorneys attempted on numerous occasions to explain to Topia's attorneys that communications between the attorneys for Egnyte and Egnyte's employees regarding this case are protected by the attorney-client privilege and would not be disclosed. Egnyte's attorneys encouraged Topia's attorneys to "simply take a deposition" to get their questions answered, but Topia refused to accept any of the dates offered for deposition.

or market share" and "valuations" for all products of Egnyte, yet does not explain why this information is relevant when Topia is not a competitor of Egnyte and does not have a competing product for which market share, profits, or projections would be relevant. Topia next alleges that Egnyte has not produced "revenues and profits" and "costs and expenses" for the accused products, yet Topia cites to Egnyte's financial documents in Exhibits 10 and 11 which provide exactly that information to Topia for the accused products. Topia falsely alleges that Egnyte has not produced any "advertising, marketing, and sales" information yet Egnyte has produced thousands of pages of these documents already to Topia. *See* Egnyte_30123-31043. Topia alleges that it needs to know the number of units, subscriptions sold, number of users and organizations, yet fails to explain why this information is relevant to determining a reasonable royalty. The yearly revenue and cost numbers in Exhibits 10-11 are more than sufficient information for Topia to calculate a reasonably royalty in this case and Topia cites no reason by subscription numbers are needed for such calculation. Topia then falsely alleges that Egnyte has failed to produce its "patent license agreements and technology transfer agreements," yet Egnyte has produced all such agreements in its possession. *See* Egnyte_29890-976. Topia's allegation that Egnyte has withheld these documents (which is false) is not supported by any evidence whatsoever other than its attorneys' conjecture. Topia also improperly requests Egnyte's "reasonable royalty calculations" and "what Egnyte intends to rely on to respond to Plaintiff's damages theories," yet such information is Topia's burden and Egnyte's expert will present such calculation in his rebuttal expert report once Topia has disclosed its calculations. How could Egnyte or its expert know this information until it first reviews Topia's expert's report? To date, Topia has refused to disclose what its damages theories are, what a reasonable royalty would be in this case, and what evidence it intends to rely upon (which is its burden), yet Topia expects Egnyte to disclose its rebuttal information now contrary to the Court's *Scheduling Order*. Finally, Topia alleges that Egnyte has not produced its "standard accounting procedures or guidelines" but fails to provide any evidence that such documents exist. Egnyte is unaware of any documents in its possession responsive to this request, yet Topia alleges, without any evidence, that Egnyte is withholding such documents.

Topia's allegations are simply without merit. Topia seeks a motion to compel for information that Topia already has in its possession or does not need given the facts of this case. For these reasons, Egnyte asks that the Court deny Topia's motion as Topia has not demonstrated any evidence to support its position.

**Issue Two:** In the second paragraph of Topia's letter to the Court for issue two, Egnyte identifies certain documents that were produced without metadata. The majority of these documents did not have any Egnyte metadata for them.[2] For instance, Topia identifies 6 signed settlement agreements, which are not ESI but hard documents that were scanned for production in this case. There was no Egnyte metadata associated with such documents. Also included in Topia's list were 3 financial documents that were prepared in response to Topia's requests for production and the Court's local rules. These documents were prepared with counsel and metadata related

---

[2] During the meet and confer call, Egnyte's attorneys told Topia's attorneys multiple times that many of the documents they are complaining about clearly would not have metadata associated with them as they are not Egnyte created business documents.

thereto was not created for the documents. Finally, Topia identifies a letter sent to Egnyte *by Topia's attorneys* many years before this case was filed. Again, this document is not ESI but a hard document *created by Topia* that was scanned for this case. There is no metadata associated with this document by Egnyte as it is *not* an Egnyte created document. For the remaining documents identified by Topia (which are 6 total), Egnyte has located that metadata and produced it to Topia.

**Issue Three:** Fact discovery in this case closed on November 30, 2023. On October 31, 2023, one month before fact discovery was to close, Topia for the first time noticed the deposition of 9 employees for Egnyte, two of which are located in Poland (and require translators) and many of which are key employees at Egnyte with extremely busy schedules. *See* D.I. 168-176. On November 3, 2023, Topia also served a subpoena to take the deposition of a former employee of Egnyte. *See* D.I. 182. On November 16th and November 20th, days before fact discovery was to close, Topia noticed the deposition of two more third parties through subpoena. *See* D.I. 187 and 188. Within a month's period of time (which included a major holiday when most Americans do not work all or most of that week), Topia proposed to take 12 depositions. This is in addition to the 5 depositions noticed by Egnyte. In order to attempt to accommodate Topia's discovery requests, Egnyte provided Topia with deposition dates of the four California-based Egnyte executives to occur in early December with the idea that once these depositions were set, the remaining employee depositions could be set around those dates or some other time in early December. *See* Exhibit 8. Any depositions prior to Thanksgiving were nearly impossible to schedule given the witnesses' and their attorneys' pre-existing schedules. Topia did not respond to this e-mail by accepting or rejecting these dates. Instead, Topia requested extending fact discovery another three months through the end of February and resetting the entire schedule for the case.

Egnyte rejected this proposed extension for two reasons: First, to date, Egnyte has spent hundreds of thousands of dollars in legal fees defending this case and the parties are still not through fact discovery. Egnyte does not want to extend fact discovery any longer than it has to as such additional time will only drive up its expenses on a case that is frankly without merit. If Topia knew or believed that it was going to take 12 depositions, then Topia should not have waited until the last minute to notice these depositions and try to cram them in the very last month of fact discovery. Topia should have noticed these depositions months ago. The Court should not reward Topia's failure to reasonably manage its own discovery needs in the case by extending fact discovery out several more months and driving up Egnyte's costs in this case.

Second, Topia's proposed schedule is unreasonable. Topia proposes that the parties take 17 depositions in January and February. Even if the parties started scheduling those depositions now, it is doubtful that the parties could reasonably schedule these depositions to be completed. In order to develop a reasonable schedule to complete fact discovery, Egnyte proposed that Topia take only 5 of its noticed depositions, which was rejected by Topia. If Topia wanted to take 12 depositions, then it should not have waited to notice such depositions until October 31st and later, and Topia should have taken some of these depositions earlier. Given the facts, good cause does not exist for Topia's proposed extension. If the Court does grant an extension, Egnyte requests that the Court limit the number of depositions to a reasonable number (*e.g.,* five) given the inactions of Topia to date and the unreasonable burden and costs that such extension will place of Egnyte.

**Fisher Broyles**

Hon. Christopher J. Burke, U.S.M.J.
December 20, 2023 | Page 4

        Respectfully submitted,

        */s/ Carl D. Neff*

        Carl D. Neff (No. 4895)

cc:    Counsel of Record – by CM/ECF and e-mail