# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TOPIA TECHNOLOGY INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | C.A. No. 21-1821-CJB |
| ) | |
| EGNYTE, INC., ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF TOPIA TECHNOLOGY INC.'S**
**OPENING LETTER BRIEF REGARDING DISCOVERY DISPUTE (D.I. 197)**

OF COUNSEL:

Mark Boland
Raja N. Saliba
Michael R. Dzwonczyk
Chidambaram S. Iyer
J. Warren Lytle, Jr.
L. Roman Rachuba
Janvi U. Shah
Sughrue Mion, PLLC
2000 Pennsylvania Ave., NW
Washington, DC 20037
(202) 293-7060

Kelly E. Farnan (#4395)
Griffin A. Schoenbaum (#6915)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
schoenbaum@rlf.com

*Attorneys for Plaintiff Topia Technology, Inc.*

Dated: December 29, 2023

Dear Judge Burke:

Pursuant to the Court's Order (D.I. 199), Topia outlines issues 1-3 in the joint letter (D.I. 197).

**Issue 1**: Egnyte's failure to produce internal API documentation for all the Accused Products in response to Topia's Request for Production Nos. 6-8, and 56-57.

Application Programming Interfaces (APIs) are intermediaries that allow applications functionalities to communicate. APIs can be external (public), to allow integration with 3rd party applications, or internal (non-public), to enable communication between sub-components of a software product, *e.g.*, communication between synchronization and security functionalities.

Despite repeated requests (Exs. 20, 22-24) Egnyte has refused to provide to Topia its internal APIs and has stated that it already produced them. D.I. 161, 67:18-19; Ex. 4. While Egnyte has produced a few API methods related to "flat file lists" for its Storage Sync and Desktop Sync/Desktop App products, Egnyte has not produced any other internal API methods related to any other Accused product, including Egnyte Connect, Platform, Mobile, Smart Cache (Turbo), Secure and Govern, Enterprise, and Large File Collaboration. Ex. 21. Egnyte has failed to produce API documentation (*e.g.* communication/integration methods for "individual functionalities" (as stated by Egnyte — D.I. 161, 42:1-3)) that make up its solutions.

This API information is highly relevant to infringement and damages analysis because it would tend to show which of Egnyte's Accused Products has the ability to integrate and communicate with synchronization functionalities included in Storage Sync and Desktop Sync/App; and also to verifying the accuracy of Egnyte's statement that Egnyte "take[s] individual functionality and put it together [*sic*] for a specific solution for a different customer." *Id*.

At a December 13, 2023 conference, Egnyte indicated that it had produced all technical documents within its possession, but on December 26, 2023, proceeded to produce another 14 files on its technical capabilities. Ex. 4. Since Egnyte has produced some internal API documentation, it stands to reason that it keeps the requested API documentation in its ordinary course of business. The Court should order Egnyte to produce its internal API documentation for all of the Accused Products.

**Issue 2**: Egnyte's refusal to identify search terms used to identify potentially responsive information, in violation of Paragraph 5(b) of the Delaware Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI").

Egnyte has consistently failed to comply with its discovery obligations by refusing to produce: API information, any emails, and, in violation of Court orders, metadata required by the Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI") ("Default Standard") (D.I. 161), and additional sales, market share, financial, advertising, marketing, licensing, and royalties documents (D.I. 157).[1]

---

[1] Egnyte's failures to Comply with the Court's Orders (D.I. 157 and 161) are the subject of Topia's related motion and accompanying briefing. D.I. 195 and 203.

Underlying these failures is Egnyte's ESI search strategy. Egnyte has represented on meet and confers that it provides documents when it is provided to counsel by the client. Such a strategy raises more questions than it answers. Egnyte has never identified search terms for anything but e-mail. On a meet and confer on December 13, 2023, Egnyte took the position that it had no obligation to identify its search terms. Topia pointed out that Section 5 of the Court's Default Standard for Discovery explicitly requires it but Egnyte still has not disclosed its search terms. To the extent Egnyte has used searched terms, they should be disclosed. In the alternative, Egnyte should be ordered to provide additional details on where and in what folders it searched for documents.

This relief is necessitated by repeated instances where Egnyte represents that it has produced all relevant documents and then produces additional documents. When Egynte initially produced two financial documents (Ex. 1), it then took the position that its financial production was complete. *Id*. One month later, on December 13, 2023, Egnyte produced two undated (and with no metadata) documents listing pricing information for 190 Egnyte products/services. Exs. 2-3. Egnyte declined to further explain the production. Ex. 4. On December 26, 2023, Egnyte produced 14 additional technical files, again with no explanation for why the files were produced so late.

In addition, Egnyte *still* refuses to produce the required metadata for documents on Egnyte's technical capabilities. Exs. 5 and 6. Again, no plausible explanation is given for this failure. Missing file name/path information, along with missing page numbers and any source identifiers on many of these documents (*see e.g.*, Exs. 7-15) strongly imply that Egnyte is improperly hand-selecting individual pages or documents to form an amalgamation of produced documents favorable to Egnyte. *AMEC Env't & Infrastructure, Inc. v. Newfields Cos., LLC*, 2014 Colo. Dist. LEXIS 1376, *5 (D. Col. Dec. 8, 2014) ("[S]elf-searching by custodians . . . is insufficient and strongly disfavored by courts.")

In light of these failures and repeated additional information coming to light, Egnyte cannot now reasonably take the position that its search strategy and methodology are reasonable. *Eurand, Inc. v. Mylan Pharms., Inc*., 266 F.R.D. 79, 85 (D. Del. Apr. 13, 2010) ("[T]he court applies a 'reasonableness test to determine the adequacy of search methodology.' An adequate search is one that 'could . . . have been expected to produce the information requested.'"); *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc*., 2016 WL 859229, *2 (D. Del. Mar. 3, 2016) ("a party must conduct a 'diligent search' pursuant to a 'reasonably comprehensive search strategy.'").

The use of search terms to locate potentially responsive ESI is widely accepted. *AMEC*, 2014 Colo. Dist. LEXIS 1376, *4; *In re Diisocyanates Antitrust Litig*., 2023 WL 427082, *3 (W.D. Pa. Jan. 26, 2023) ("[S]earch term methodologies are routinely used, particularly in large and complex commercial and antitrust cases, as an acceptable if not preferred approach.") If Egnyte did utilize search terms to locate potentially responsive ESI, the Default Standard mandates that Egnyte disclose these terms and provide Topia an opportunity to request additional terms. Default Standard ¶5.a. (incorporated by the Scheduling Order, D.I.24.)

On the other hand, if Egnyte did not use ESI search terms, then Egnyte bears the burden of establishing reasonableness of its search strategy. *Smith v. Life Investors Ins. Co. of Am*., 2009 WL

2045197, *7 (W.D. Pa. July 9, 2009) ("Defendant has a burden to demonstrate that its search for documents was reasonable. A thorough explanation of the search terms and procedures used would be a large step in that direction."). The discovery record here demonstrates that Egnyte's client-led search strategy is insufficient. For this reason, and consistent with the Default Standard for Discovery, Egnyte should be ordered to identify its search terms or identify its search strategy with specificity.

**Issue 3**: Egnyte's refusal to produce emails

Egnyte has not produced a single email in this case, despite Topia's requests. Ex. 20. Not until August 9, 2023 did Egnyte even contemplate producing responsive emails, when it agreed to search for emails based on exchanged search terms. Ex. 17. Egnyte did not propose search custodians and terms of its own until August 18, 2023. Ex. 17. Topia responded on August 29, 2023 with custodians and requesting additional terms. Ex. 18. Ex. 18. For months, the Parties negotiated on custodians, terms and hit counts[2]. Ex. 19. This negotiation culminated in November 2023, when Topia further narrowed its requested terms to those identified in Ex. 19, and Egnyte no longer raised (thus waiving) any objections to such agreed-upon terms. *Id.*[3]

However, at the December 13, 2023 conference, Egnyte refused to produce any emails until Topia produced additional documents responsive to 19 additional ESI terms that Egnyte identified. Ex. 4. Topia has already produced over 6,600 e-mails; Egnyte has produced none. Egnyte's latest position is unreasonable. First, Egnyte should have produced emails as part of its regular ESI production, and still hasn't provided an excuse for why it did not do so. Second, Egnyte never previously conditioned email production on Topia producing additional responsive documents, which to be clear, Topia does not concede exist. Third, Egnyte has not met its burden of showing why any additional search terms are necessary, or why Egnyte is entitled to 9 additional terms beyond the 10 contemplated by the ESI order.

The Court should require Egnyte to immediately produce emails from the search terms and custodians agreed upon by the Parties in Ex. 25 (as originally agreed in Ex. 19).

                                                                       Respectfully,

                                                                       */s/ Kelly E. Farnan*

                                                                       Kelly E. Farnan (#4395)

cc:      All Counsel of Record (via CM/ECF)

---

[2] Egnyte has not confirmed whether the hit counts include document family members.

[3] Topia had good cause to list more than 10 terms because Egnyte's proposal did not include any terms related to sales/financial information, the asserted patents, or related IPRs. Ex 18.