# Fisher Broyles

**Carl D. Neff**
Partner
Carl.Neff@FisherBroyles.com
Direct: 302.482.4244
CSC Station
112 S. French Street
Wilmington, DE 19801
www.FisherBroyles.com

January 5, 2024

**VIA CM/ECF**

The Honorable Christopher J. Burke, U.S.M.J.
J. Caleb Boggs Federal Building
844 N. King Street, Unit 28, Room 2325
Wilmington, DE 19801-3555

Re:   *Topia Technology, Inc. v. Egnyte, Inc.*, Case No. 1:21-cv-01821-CJB

Dear Judge Burke:

This letter is submitted to the Court pursuant to the Court's Order (D.I. 199).

**Issue 1:** Egnyte has produced to Topia all of its internal and public API documentation for the accused products. Egnyte is not aware of any additional API documentation that has not been produced. Topia *admits* in its letter to the Court that Egnyte has produced its APIs to Topia. However, Topia's attorneys argue (without any evidence whatsoever) that Egnyte has allegedly not produced certain API documentation that Topia's attorneys *believe* exist (again, without any evidence) for certain Egnyte alleged products.

First, Topia's letter to the Court fails to state that Egnyte produced all of its source code for the accused products to Topia for review on two separate occasions totaling 4 days. The functionality of the accused products can be found in such source code, and Egnyte produced to Topia all source code requested by Topia.

Second, the list of "accused products" identified in Topia's letter is inaccurate. Egnyte has already identified the "accused products" in its interrogatory answer, yet Topia continues to seek information on products that are simply not accused products (and in some cases are not products at all).[1]

Third, Topia has presented this Court with *no evidence* that anything has been withheld by Egnyte. There is no deposition testimony, citation to documents that allegedly reference other API documentation, etc. that supports Topia's attorneys' pure conjecture. At the end of the day, the only evidence presented to the Court is Topia's attorneys' assumptions and unfounded beliefs. This is wholly insufficient to prove that Egnyte's production is allegedly insufficient, and certainly insufficient to justify the Court granting Topia's motion to compel.

Finally, in the last paragraph of its letter for issue 1, Topia criticizes Egnyte's production of additional technical information to Topia. Pursuant to its requirements under the Federal Rules, Egnyte continues to search for additional responsive documents to Topia's extreme plethora of

---

[1] Egnyte does not admit that any of the products identified in its interrogatory answer infringe any of the asserted claims in this case. The identified products in Egnyte's interrogatory answer simply fall within a very broad category of products that generally do certain types of functionalities.

document requests. To the extent that any additional documentation is found, Egnyte has timely produced such documentation to Topia and will continue to produce such documentation.

**Issue 2:** Paragraph 5(b) of the Court's Delaware Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI") (the "Default Standard") states: "If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party." The Default Standard addresses two categories of ESI: "(i) the non-custodial data sources identified in accordance with paragraph 3(b); and (ii) emails and other ESI maintained by the custodians identified in accordance with paragraph 3(a)." Default Standard, ¶ 5(b).

With respect to ESI in paragraph 3(b), Egnyte's attorneys worked with various employees within Egnyte to obtain the ESI responsive to Topia's requests for production and subject to the objections made by Egnyte to the requests. There were no search terms created for these searches as the employees were able to locate the responsive documents. This is permitted under the Default Standard as the order states clearly: "*If* the producing party *elects* to use search terms …." (emphasis added). Egnyte's attorneys explained this to Topia's attorneys on the meet and confer call, but Topia incorrectly took the position that search terms are mandatory for all ESI (when they clearly are not). Topia's incorrect belief is further demonstrated in Topia's letter where Topia states that the Default Standard "requires" search terms. The Default Standard clearly does not.

With respect to the ESI maintained by the custodians identified in accordance with paragraph 3(a), Egnyte did disclose its search terms for e-mails to Topia and Topia does not appear to have any issue with this disclosure.

In the remainder of Topia's letter to the Court on this issue, Topia falsely alleges that Egnyte's production is "unreasonable" without providing any evidence to support that belief. First, Topia points to the fact that Egnyte produced comprehensive financial documents for all of the accused products (including, revenue, costs, expenses, etc.), produced price lists (as requested by Topia), and produced technical documentation for the accused products. These productions only demonstrate that Egnyte is able to produce ESI pursuant to the Default Standard, not that any ESI has not been produced.

Second, Topia falsely alleges that Egnyte has withheld metadata. As set forth in Egnyte's other responsive discovery dispute letter to the Court, all metadata has been produced for documents that contain metadata. Topia's attorneys' conjecture on this issue is not evidence that any metadata is missing. Regardless, Egnyte's attorneys continue to work with its client to locate any additional metadata for these handful of documents (out of over 34,000 pages of documents produced) and will produce any additional metadata if located.

Third, Topia incorrectly requests that Egnyte should be ordered by the Court to describe exactly what it did to locate the paragraph 3(b) ESI. This is improper. There is nothing in the Default Standard that requires a party to provide any information on how it collected information if that party elects to not use search terms. Topia's only "authority" for its position is a 2009 case from the Western District of Pennsylvania, *Smith v. Life Investors Ins. Co. of Am.*, 2009 WL 2045197 (W.D. Pa. July 9, 2009), which is not relevant to the Default Standard. Moreover, the

non-privileged portion of this information could have been obtained by Topia had it bothered to depose any witnesses during fact discovery or Topia could have submitted an interrogatory on the issue. There is simply no legal or factual support for Topia's requested relief.

**Issue 3:** On August 18, 2023, Egnyte's attorneys sent to Topia an e-mail that identified Egnyte's e-mail search terms and provided a list of custodians. *See* Exhibit 17. In response, on August 29, 2023, Topia's attorneys stated to Egnyte that such search terms and custodians were allegedly "unacceptable" and proposed additional terms and custodians. *See* Exhibit 18. Over the next couple of months (including numerous meet and confers), Topia proposed many variations for search terms, all of which resulted in hundreds of thousands and, in many instances, millions of e-mails being identified by Topia's overbroad search terms. Any delays in the identification of acceptable search terms are on Topia for continually proposing overbroad and clearly unreasonable search terms week after week.

On November 17, 2023, Topia finally proposed search terms that resulted in a reasonable number of ESI e-mails being identified. *See* Exhibit 19. Egnyte was close to producing its ESI e-mails to Topia when Topia told Egnyte on November 30, 2023 that it would not run Egnyte's proposed search terms because Topia's attorneys (in their own opinion) deemed such terms irrelevant to the case. *See* Exhibit 26. When Topia refused to follow the Court's ESI order in the same manner that Egnyte had for Topia, Egnyte halted its production of ESI until Topia complied with the Court's ESI order. For instance, Egnyte never told Topia that any of its search terms were not relevant to the case. Egnyte simply ran the proposed search terms and communicated the total number of hits caused by the search terms. Topia did not extend Egnyte the same consideration.

Despite these issues, the parties are currently working on finalizing Egnyte's proposed search terms for ESI e-mails and Egnyte is hopeful that Topia will continue to follow the Court's ESI order so the parties can exchange such ESI to one another shortly. Given this, the Court does not need to rule on this matter at this time. Provided that Topia continues to act in good faith and follows the Court's ESI order in the same spirit that Egnyte did for Topia, Egnyte does not believe that production by both parties will be an issue.

Respectfully submitted,

*/s/ Carl D. Neff*

Carl D. Neff (No. 4895)

cc:   Counsel of Record – by CM/ECF and e-mail