**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TOPIA TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.  21-1821-CJB |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| EGNYTE, INC., | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

**DEFENDANT EGNYTE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
*DAUBERT* MOTION TO EXCLUDE THE DAMAGES OPINIONS AND TESTIMONY
OF PLAINTIFF'S EXPERT STEPHEN A. HOLZEN**

Carl D. Neff (No. 4895)
PIERSON FERDINAND LLP
CSC Station
112 S. French St.
Wilmington, DE 19801
Tel.: (302) 482-4244
carl.neff@pierfed.com

*Of Counsel:*

Ryan T. Beard (*pro hac vice*)
PIERSON FERDINAND LLP
2021 Guadalupe Street, Suite 260
Austin, Texas 78705
Tel.: (512) 577-2673
ryan.beard@pierfered.com

Armon Shahdadi *(pro hac vice)*
PIERSON FERDINAND LLP
260 Peachtree Street NW, Suite 2200
Atlanta, GA 30303
Tel.: (470) 657-9784
armon.shahdadi@pierfed.com

Christopher R. Kinkade (*pro hac vice*)
PIERSON FERDINAND LLP
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
Tel.: (609) 415-0101
christopher.kinkade@pierferd.com

John T. Gutkoski *(pro hac vice)*
PIERSON FERDINAND LLP
101 Federal Street, Suite 1900
Boston, MA 02110
Tel: (978) 775-2681
john.gutkoski@pierferd.com

***Attorneys for Defendant Egnyte, Inc.***

Dated: January 21, 2025

## <u>TABLE OF CONTENTS</u>

Page(s)

TABLE OF AUTHORITIES ................................................................................................. iii

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS..................... 1

II.   SUMMARY OF THE ARGUMENT ................................................................ 1

III.  FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

    A.    All Asserted Claims Are Limited To A Single User Synchronizing Entire Files From One Device Of That User To Another Device Of That Same User. ................. 2

    B.    Topia Accuses Two of Egnyte's Products Of Infringement. ...................................... 3

    C.    Egnyte Raised This Issue Of Non-Infringing Functionality In The Accused Products Months Before Expert Reports Were Due. .................................................. 4

    D.    Topia's Technical Expert Admits That Certain Functionality Of The Accused Products Cannot Possibly Infringe The Asserted Claims. ........................................... 5

    E.    Topia's Damages Expert Holzen Fails To Apportion The Value Of The Accused Products That Infringes The Specific Type Of Synchronization Actually Claimed In The Asserted Claims. ................................................................................................. 9

    F.    Holzen Overstates and Double Counts The Actual Number Of Users To Inflate The Royalty Base................................................................................................................ 11

    G.    Holzen Also Fails to Apportion His Royalty Rate Based Upon Value Actually Attributable To The Asserted Claims Or How The Accused Products Are Actually Utilized By Users. ..................................................................................................... 12

    H.    Holzen Continues To Refuse To Consider Actual Usage Data Provided By Egnyte And Its Expert Mr. Pinsonneault Showing That An Extremely Few Number Of Synchronizations Using The Accused Products Could Possibly Infringe the Asserted Claims........................................................................................................................ 15

IV.   ARGUMENT.................................................................................................................... 17

    A.    Damages Opinions And Testimony That Fails To Properly Apportion For The Value Attributable To The Asserted Claims Is Unreliable And Should Be Excluded From Trial To Avoid Jury Confusion........................................................................ 17

    B.    Holzen Fails To Apportion His Damages Analysis To Reflect That The Accused Products Have Many Functionalities Apart From Syncing At All. .......................... 19

C.   Holzen Fails To Further Apportion His Damages Analysis To Reflect That The Accused Products Perform Forms Of Syncing Not Covered By The Asserted Claims.................................................................................................................. 20

D.   Mr. Holzen Only Conducted An Analysis And Calculation For Storage Sync And Provides No Reliable Basis Or Principles To Apply The Same Calculation To Desktop App............................................................................................................ 21

V.   CONCLUSION.................................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Baxalta Inc. v. Bayer Health, LLC,*
    513 F. Supp. 3d 426 (D. Del. 2021) ........................................................................ 18, 20

*Daubert v. Merrell Dow Pharms.,*
    509 U.S. 579 (1993) ....................................................................................................... 17

*Elcock v. Kmart Corp.,*
    233 F.3d 734 (3d Cir. 2000) .......................................................................................... 17

*Ericsson, Inc. v. D-Link Sys., Inc.,*
    773 F.3d 1201(Fed. Cir. 2014) .................................................................................. 19, 21

*Garretson v. Clark,*
    111 U.S. 120 (1884) ................................................................................................... 19, 21

*GlaxoSmithKline LLC v. Glenmark Pharms. Inc.,*
    Civil Action No. 14- 877-LPS-CJB, 2017 WL 8948975 (D. Del. May 30, 2017) ........... 18

*Hebert v. Lisle Corp.,*
    99 F.3d 1109 (Fed. Cir. 1996) .................................................................................. 18, 20

*In re Paoli R.R. Yard PCB Litig.,*
    35 F.3d 717  (3rd Cir. 1994) ......................................................................................... 17

*Koninklijke Philips N.V. v. Telit IoT Sols., Inc.,*
    Civil Action No. 20-1708-CFC, 2023 WL 8600662 (D. Del. Dec. 12, 2023) .............. 18

*LaserDynamics, Inc. v. Quanta Comput., Inc.,*
    694 F.3d 51 (Fed. Cir. 2012) ......................................................................................... 18

*Minerva Surgical, Inc. v. Hologic, Inc.,*
    C.A. No. 18-00217-JFB-SRF, 2021 WL 3048447 (D. Del. July 20, 2021) .................... 18

*Padillas v. Stork–Gamco, Inc.,*
    186 F.3d 412  (3d Cir.1999) .......................................................................................... 17

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
    904 F.3d 965  (Fed. Cir. 2018) ................................................................................ 18, 20

*Virtnetx, Inc. v. Cisco Sys., Inc.,*
    767 F.3d 1308 (Fed. Cir. 2014) .......................................................................... 18, 19, 21

**Other Authorities**

Fed. R. Evid. 702 ......................................................................................... 17, 18, 21, 22

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Topia Technology, Inc. ("Topia") alleges that Egnyte, Inc. ("Egnyte") infringes four U.S Patents, Nos. 10,289,607 (the "'607 patent"); 10,642,787 (the "'787 patent"); 10,754,823 (the "'823 patent"); and 11,003,622 (the "'622 patent") (collectively, the "Asserted Patents").  Claim construction, fact discovery, and expert discovery are complete.  D.I. 330, 345.  The Jury Trial is scheduled to begin July 28, 2025.

## II.    SUMMARY OF THE ARGUMENT

1.    Topia accused two Egnyte products – Desktop App and Storage Sync – of infringing its patents' claims.  Those claims, on their face and as further construed by this Court, only cover a very specific type of file synchronization.  Both Desktop App and Storage Sync provide users with many functionalities unrelated to synching at all.  Both also provide the capability to synch files in various ways, most of which are unrelated to and not covered by the Asserted Patents.  Despite these realities, Topia's damages expert fails to apportion his calculated value of the accused products to reflect the actual scope of Topia's patent claims. Based on deposition testimony, it appears that Topia's damages expert and technical expert failed to discuss with each other what the asserted claims actually cover, and what functionality and uses of the accused products infringe and do not infringe the Asserted Patents. The only discussion between the experts appears to be a technical paper addressing how often syncing of files is done using delta sync versus any type of full file sync.

2.    As a result, Topia's damages expert fails to apportion the value of Storage Sync between its synchronizing and non-synchronizing features, and only appropriations for delta sync versus full file sync.

3.    He further fails to apportion the value of Storage Sync for non-infringing full file

syncing and the type of full file specific syncing claimed in the Asserted Patents.

4.    Topia's damages expert also provides only a royalty analysis of Storage Sync, all but ignoring the more prevalent Desktop App product.

5.    Given these failures, Topia and its expert fail to adhere to the requirements of black letter Federal Circuit requirements for calculating a reasonable royalty for multi-component products. The improper opinions of Topia's damages expert, therefore, should be excluded to avoid jury confusion.

## III.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    All Asserted Claims Are Limited To A Single User Synchronizing Entire Files From One Device Of That User To Another Device Of That Same User.

Topia asserts that Egnyte infringes 17 claims from four related patents – claims 4, 5, 7, 12, 17, and 19 of the '607 patent; claims 1-4 and 8 of the '787 patent; claims 1, 2, and 8 of the '823 patent; and claims 1, 2, and 11 of the '622 patent (collectively, the "Asserted Claims"). (*See* Ex. 9 (Plaintiff Topia Technology, Inc's Supplementation to Final Infringement Contentions).)[1]

As this Court determined, the Asserted Claims do not cover all synchronization of computer files or even all full file synchronization, but instead cover a "'specific way to synchronize' such full files." *See* D.I. 106 at 7 *and* (Ex. 31 (June 3, 2024 Discovery Disputes Hearing Tr., p. 6-7). Generally, each of the Asserted Claims require *a single user* (1) modifying the content of a file on a *first device of that user*, (2) the modified file is sent by the first user device *automatically* to a server, (3) the server then *automatically* sends the modified file to the *second device of that same user*, and (4) the second device of the user replaces the previous version

---

[1] All Exhibit ("Ex.") references are to the Declaration of Ryan Beard In Support of Egnyte, Inc.'s Motion for Summary Judgment of Non-Infringement and *Daubert* Motion to Exclude the Damages Opinions and Testimony of Plaintiff's Expert Stephen A. Holzen filed herewith.

of the file with the modified file. (*See, e.g.,* Ex. 2 ('607 Patent, Claims 12 and 17).) The Asserted Claims also include additional claim limitations (*e.g.,* some claims concern prioritizing metadata for the modified file, using the metadata for file representations for the user, etc.). (*See id.*)

**B.    Topia Accuses Two of Egnyte's Products Of Infringement.**

Egnyte's customers are enterprises. (*See* Ex. 15 (Supplemental Affirmative Report of Stephen A. Holzen, September 6, 2024 ("Holzen Report")) ¶¶ 22-25, 54-60.) Egnyte offers numerous products that are designed to interact and use Egnyte's Cloud, which is the central repository for Egntye's enterprise customer's files. (Ex. 10 (Expert Report of Andrew Wolfe, Ph.D Rebutting Supplemental Expert Report of Dr. Prashant Shenoy Regarding Infringement of U.S. Patent No. 10,289,607; 10,642,787; 10,754,823; and 11,003,622 ("Wolfe Report")) ¶ 114.) Egnyte offers the enterprises subscription plans that package together various products in various subscription tiers depending on the size of the enterprise and its needs. (*Id.* ¶¶ 115-16.) Topia has alleged that the following Egnyte products infringe the Asserted Claims:

| Egnyte Product | Alternate Names |
|---|---|
| "Desktop App" | Desktop Sync; Egnyte Drive; and Desktop Client |
| "Storage Sync" | Smart Cache; HybridCloud; and Turbo |

(Ex. 10 (Supplemental Expert Report of Dr. Prashant Shenoy Regarding Infringement of U.S. Patent No. 10,289,607; 10,642,787; 10,754,823; and 11,003,622 ("Shenoy Report")), ¶129; Ex. 15 (Holzen Report) ¶ 61.)

Desktop App is included in all subscription plans, while Storage Sync is only provided to a limited number of enterprises that have a very specific need for that product. (Ex. 11 (Wolfe Report) ¶ 127.) Holzen incorrectly assumes in his reports that (1) Desktop App and Storage Sync

(collectively, the "Accused Products") *only do synchronization* and (2) *all full file synchronizations* using the Accused Products (*i.e.*, synchronizations not involving delta sync) *infringe the Accused Products*.[2] (*Id.* ¶¶ 126-28).)  Both allegations are incorrect and disproven by the deposition admission of Topia's own technical expert Dr. Shenoy. Indeed, as explained in detail below, much of the functionality provided by the Accused Products *does not involve synchronization at all*.  Holzen's analysis and opinions fail to determine, and apportion for, what amount of functionality in the Accused Products is directed to synchronization, and then further fail to determine what amount of that synchronization performed by the Accused Products is done in the specific way claimed in the Asserted Claims.

###    C.    Egnyte Raised This Issue Of Non-Infringing Functionality In The Accused Products Months Before Expert Reports Were Due.

Anticipating that Topia and its damages expert Holzen might not consider the actual functionality of the Accused Products that allegedly performs these specific claim elements (and apportion appropriately) but would instead simply allege that *all functionality* of the Accused Products infringes the Asserted Claims, Egnyte raised this issue with the Court in its pleading and at a hearing months before expert reports were due. (*See* Ex. 31 (June 3, 2024 Discovery Dispute Hearing Tr.).) At the discovery dispute hearing, the Court questioned Topia's attorneys on this very issue. (*Id.* pp. 6-9.)  Topia's attorneys agreed with the Court that the Asserted Claims only cover "a specific type of file synchronization in a specific arrangement."  (*Id.* at. 8.)

When the Court questioned Egnyte on this same issue, Egnyte's attorney explained that the evidence establishes that most of the functionality provided by the Accused Products has nothing to do with synching at all and, further, that any of the synching the Accused Products perform is

---

[2] "Delta Sync" means that synchronization does not send the full file, but instead only sends the differences between the original file and the modified file.

4

not the specific synching required by the Asserted Claims. (*See id*. at 24-26, 29.) The Court then told Topia and its counsel that it may very well be appropriate for Egnyte to bring a motion to exclude if Topia's damages expert does not apportion damages correctly based on the functionality claimed in the Asserted Claims. (*See id*. at 49.) Topia and its damages expert Holzen have now done what the Court cautioned against, and this is Egnyte's motion to exclude.

### D. Topia's Technical Expert Admits That Certain Functionality Of The Accused Products Cannot Possibly Infringe The Asserted Claims.

The Accused Products are not used only for synchronizing files. The Accused Products are used by the employees of Egnyte's customers to interact with Egnyte's Cloud, where all of the enterprise's files are stored, synchronized, and protected by Egnyte. (Ex. 10 (Wolfe Report), ¶ 114 *et seq.*) For instance, many of Egnyte users use the Accused Products to only interact between a single device (*i.e.,* a personal computer) and the Egnyte Cloud. (*Id.*) This is done because the Egnyte Cloud is a central repository for the enterprise's files where all the employees of the company can access the files. (*Id.*) The enterprise's employees will use the Accused Products to download files to their computer, upload new files to the Egnyte Cloud, synchronize the files to from their device to the Egnyte Cloud, and to share those files with other employees and third parties (*e.g.,* the enterprise's customers). (*Id.*) None of these uses of the Accused Products infringe the Asserted Claims. (*Id.*)

Knowing this, Dr. Shenoy admitted that the ***only*** functionality for Desktop App that can possibly infringe the Asserted Patents is its "connected folders/offline access" functionality. (Ex. 21 (Deposition of Dr. Prashant Shenoy January 8, 2025 ("Shenoy Dep."), 27:12 – 28:6.) This limited functionality permits synchronization between the devices of a user ***only*** if (1) the user logs onto Desktop App from a user's device and selects a specific file or folder for offline synchronization ***and*** (2) that same user would then also need to have a second device with Desktop

App and also select the same folders or files for synchronization on that second device that they had selected on the first device.[3]  (*See id.*)  Usage of this "connected folders/offline access functionality" in this specific way is rarely done by any of Egnyte's users (███████████████████ ███████████████████████████████████). (Ex. 16 (Expert Report of Gregory Pinsonneault, October 9, 2024 ("Pinsonneault Report")), ¶ 96.)  Nevertheless, Dr. Shenoy admitted that ***all*** other usage and functionality of Desktop App (including any other synchronizations done by the product) cannot infringe the Asserted Claims, including:

- A user accessing, viewing, uploading, and downloading a file from the Egnyte Cloud (Ex. 20 (Shenoy Dep.) at 12:20 – 13:10);

- Synchronizations between a device and the Egnyte Cloud (*id.* at 14:11 – 15:18);

- Synchronizations between different users' devices (*id.* at 19:10-21);

- Modification of files between two users (*id.* at 124:21 – 125:14);

- Collaborations (*i.e.,* two different users or a user and a third working together on a file) (*id.* at 123:25 – 124:14); and

- Sharing of files between two users or a user and third party (*id.* at 124:21 – 125:14).

Unlike Desktop App, Storage Sync is a product used by very few of Egnyte's enterprise customers. (Ex. 16 (Pinsonneault Report) ¶ 96 *et seq.*)  For example, in 2024, Egnyte had ██████ ██████████████████████████████████████████. Usage of Storage Sync has steadily decreased year by year for Egnyte's customers ███████████████████████████ ████████████████. (*Id.*)

---

[3] Even these users do not infringe any of the Asserted Claims for the reasons stated in Egnyte's dispositive motion regarding non-infringement filed with this motion.

Like Desktop App, however, much of the functionality for Storage Sync has nothing to do with synchronization, and the only syncing provided by Storage Sync that could then possibly infringe the Asserted Claims requires that a single user sync a modified file using Storage Sync to the Egnyte Cloud, and then that file must be either (1) automatically transferred by the Egnyte Cloud to a second Storage Sync that the same user has access to (which is extremely unlikely given that it would be at another office of the enterprise and the user would have to physically be at that second office), (*see* Ex. 10 (Wolfe Report) at ¶¶ 130-31), or (2) automatically transferred by the Egnyte Cloud to a second device of the same user provided that the user has designated such file for sync using the "connected folders/offline access" functionality of Desktop App previously discussed.[4] (Ex. 9 (Shenoy Infr. Report) at ¶¶ 197-198, 204-211, 218, 225-26; Ex. 20 (Shenoy Dep.) at 28:1-6, 28:20-25, 29:8-20, 30:23 – 31:7, 31:19 – 32:3, 36:18-23.)  Knowing this, Dr. Shenoy admitted that the following functionality of Storage Sync cannot infringe the Asserted Claims:

- A user accessing or viewing documents using Storage Sync (Ex. 20 (Shenoy Dep.) at 28:12-25);

- Synchronization between Storage Sync and the Cloud (*id.* at 29:1-20);

- Any synchronizations that do not involve the same user (*id.* at 36:18-23);

- Modification of files between two users (*id.* at 124:21 – 125:14)

- Collaborations (*i.e.,* two different users or a user and a third working together on a file) (*id.* at 123:25 – 124:14); and

- Sharing of files between two users or a user and third party (*id.* at 124:21 – 125:14).

---

[4] For the reasons stated in its accompanying dispositive motion on non-infringement, Egnyte asserts that no usage of Storage Sync can infringe any of the Asserted Claims.

While its technical expert Dr. Shenoy readily admitted these non-infringing uses/functionalities of the Accused Products, Topia appears to have insulated its damages expert Holzen from knowing about them. Dr. Shenoy communicated none of them to Holzen and, according to Dr. Shenoy, Holzen never asked him whether any functionality within the Accused Products fails to infringe the Asserted Patents. (Ex. 20 (Shenoy Dep.) at 12:11-20; 21:14-16, 36:25 – 37:6; 126:2-8). Apparently, Dr. Shenoy only provided Holzen with information from a technical report that, in general, roughly 80 percent of any synchronizations done will be full file synchronizations and roughly 20% will be delta sync transactions.  According to Dr. Shenoy, no further information was provided by him or requested by Holzen concerning what functionality in the Accused Products actually infringes or does not infringe the Asserted Claims:



████████████████████████████████████

(Ex. 20 (Shenoy Dep.) at 42:15 – 44:3.)

Despite Shenoy's admissions, Holzen repeatedly cites in his report to his purported interviews with Dr. Shenoy to support his otherwise baseless claim that the Accused Products are *only used for synchronization*, and that *all non-delta sync functionality* of the Accused Products infringes the Asserted Claims. (*See generally* Ex. 15 (Holzen Report).)

> **E.    Topia's Damages Expert Holzen Fails To Apportion The Value Of The Accused Products That Infringes The Specific Type Of Synchronization Actually Claimed In The Asserted Claims.**

Despite the Asserted Claims being limited to a very specific type of synchronization (*e.g.,* full file synchronization, with a single user, two devices of that same user, etc.) that only potentially could cover, at best, a very small and limited subset of the functionality of the Accused Products, Topia seeks to proceed to trial claiming damages for *any and all sync and non-sync usage* of the Accused Products (as long as they do not involve delta synchronizations). Topia's damages expert Holzen has submitted an initial report and then a reply report after seeing Egnyte's expert's response. (*See* Ex. 15 (Holzen Report) *and* Ex. 17 (Reply Expert Report Stephen A. Holzen, November 8, 2024 ("Holzen Reply Report")).) Holzen opines that Topia is entitled to an ongoing reasonable royalty for any infringement in this case by Egnyte, regardless of the number of Asserted Claims infringed or the nature of any such infringement. (*See generally id.*)

In determining his proposed royalty, however, Holzen does not consider or account for the actual scope of the Asserted Claims as construed by the Court. (*See id.*) Holzen has not even read the Court's claim constructions. (Ex. 21 (Holzen Dep.) at 202:10-12.) His analysis and opinions use the value of the Storage Sync product as the smallest saleable patent practicing unit despite such product being used by relatively very few Egnyte customers. (*Id.* at pp. 43-46.) Holzen

assumes that Storage Sync is representative of Desktop App (even though both Accused Products operate differently, Topia's allegations of what could be a "device" for each product is different, both products have different accused functionality that is not present in the other product., etc.), *id*, and conducts no independent analysis of Desktop App and what functionality and usage of Desktop App could possibly infringe the Asserted Claims (Ex. 15 (Holzen Report) ¶¶ 199-225; Ex. 17 (Holzen Reply Report) ¶55). Instead, Holzen employs the alleged non-delta sync value of the Storage Sync product (*i.e.,* the 80%) and does not apportion that value to account for the product's many functionalities unrelated to synchronizing files at all or for the vast majority of its synchronizing functions that do not fall within the specific claim elements in the Asserted Claims. (*See* Ex. 21 (Holzen Dep.) at pp. 43-46; *see generally* Ex. 15 (Holzen Report).)

Holzen also incorrectly believes he is not required to apportion the functionality and actual use of the Accused Products by Egnyte's customers relative to what is actually claimed by Topia in the Asserted Claims because Topia asserts apparatus and system claims and not only method claims. (Ex. 21 (Holzen Dep.) at 57:16 – 65:13.)  Because such claims can technically be considered to be infringed by Egnyte's making, selling, or offering for sale of any functionality that could possibly infringe the Asserted Claims (no matter how insignificant that functionality may be for the product), Holzen assumes such alleged infringement does not require him to still apportion based on the infringing and non-infringing functionality of the Accused Products or how often Egnyte's users actually use this functionality for the Accused Products. (*See id.*)  Holzen, therefore, makes no such apportionment to either his proposed royalty base or rate based on the Asserted Claims.

**F.      Holzen Overstates and Double Counts The Actual Number Of Users To Inflate The Royalty Base.**

Holzen includes in his royalty base all users who have a copy of, or access to, any of the Accused Products regardless of whether they ever used the Accused Product in a manner that could possibly infringe the Asserted Claims. (Ex. 21 (Holzen Dep.) at 57:16 – 62:21; Ex. 15 (Holzen Report) ¶¶ 121-123.)

> Q:  But regardless of whether they're actually infringing or just being capable of infringing, you include them in the royalty base?
>
> A:  That's correct.

(Ex. 21 (Holzen Dep.) at 61:2-5.)  Given this, Holzen has included every user for his damages analysis  without considering whether any of their actual usage of the Accused Products, if any, infringed an Asserted Claim. In other words, Egnyte owes a royalty to Topia for every one of its users simply because such user ***could have*** used the Accused Product to potentially infringe its Asserted Claims.

Furthermore, if a user has access to both of the Accused Products (*i.e.,* Desktop App and Storage Sync), then Holzen counts that user twice in his royalty base regardless of whether the user actually used the Accused Products or if the user used the Accused Products not in a way that could possibly infringe Asserted Patents.  (Ex. 21 (Holzen Dep.) at 65:8 – 66:22.)

> Q:  So, if I understand your testimony, you don't make any distinction between how users are using any of the four modules in terms of the royalty base. If they have the module, they're in the base? Correct?
>
> A:  Yeah. Any module that Egnyte distributed to a customer is in the base.
>
> Q:  And we'll look at it in further detail in a second, but in some cases, if a user received more than one of the four modules, they get counted in the base multiple times?
>
> A:  Yeah, I would say that the instances of infringement are counted in the base multiple times, because you would have, let's say, Desktop Sync and Storage Sync, for example.

Q: So, again, if I'm a user and I only ever used any of these modules with my laptop in the cloud, I never use them with a phone or tablet, no second device, the only thing I have is a laptop and it connects to my company's server, I still get counted in the base?

A: The active users are counted in the base in full.

Q: And if I never even, although it's there on my computer, use Desktop App or Desktop Sync or Storage Sync or Storage Cache, but it's there and available to me, you include those users in the base as well?

A: Any user that has access to an instance of infringing functionality is included in the base.

(*Id.* at 54:10 – 56:5.)  Furthermore, Holzen fails to use or consider the actual usage numbers provided by Egntye's expert, which show the exact number of users that have access to Storage Sync and Desktop App.  (Ex. 16 (Pinsonneault Report) ¶ 96 *et seq*.)  Instead, Holzen estimates the users of both Accused Products based on an access "estimate" that he simply makes up himself (*i.e.,* 73-83% of all users), which is not even remotely accurate. (Ex. 15 (Holzen Report) ¶ 123.)

### G.     Holzen Also Fails to Apportion His Royalty Rate Based Upon Value Actually Attributable To The Asserted Claims Or How The Accused Products Are Actually Utilized By Users.

In his analysis of the measure of damages, Holzen contends that any adjustments based upon actual use of the Accused Products in an infringing manner is properly made to the royalty rate and not to the royalty base. (Ex. 21 (Holzen Dep.) at 64:21 – 65:6.)  However, nowhere in his royalty rate analysis and calculations does Holzen perform any such apportionment.

Holzen determines his royalty rate by employing an analysis of the *Georgia-Pacific* factors. (Ex. 15 (Holzen Report) ¶¶ 124 *et seq.*)  In that analysis, he determines that only three of the factors (9/10 (considered in tandem), 11 and 13) offer a "quantitative indicator of value" as to the rate. (*Id.* at ¶ 229.)  But in his discussion and application of each of the three he never apportions for the actual inventions' value:

He discusses Factor 9 "The Utility and Advantages of The Patent Property …" and Factor 10 "The Nature of the Patented Invention, The Character of The Commercial Embodiment Of It As Owned and Produced by the Licensor, and The Benefits To Those Who Have Used The Invention" together but never defines the inventions nor apportions for them or their value. (*Id.* at ¶¶ 177-81.)  The only adjustment Holzen makes based upon what synchronizations are performed is to discount his royalty rate by 20% for delta syncs. (*Id.* at ¶ 181; Holzen Dep. at 74:19 – 79:11.) He does so purportedly because, according to what Shenoy told Holzen, 20% of the files synchronized by Egnyte's users are of a size that would use delta sync. (*Id.*)  Holzen and Shenoy concede that delta syncs do not infringe the Asserted Patents, but never consider uses of the Accused Products by the users that do not involve synchronizations at all or the full file synchronizations done by the Egnyte users that cannot infringe the Asserted Claims (*e.g.,* synchronization from a user device to just the Egnyte Cloud, synchronizations involving two devices of different users, etc.). (*Id.*)

In other words, Holzen ***incorrectly assumes*** that usage and functionality of the Accused Products ***not involving synchronization at all*** infringes the Asserted Patents ***and*** that ***all*** 80% of synchronizations that involve full file syncing are infringing synchronizations without considering the other specific claim elements of the Asserted Claims that must be present (*e.g..,* only one user, two devices associated with that specific user, automatically transferred, etc.). (*Id.*)  Holzen's sole basis for these incorrect assumptions is to claim that Topia's technical expert Dr. Shenoy told him it is the case in an interview. (*Id.*; Ex. 17 (Holzen Reply Report) at 7.)  Dr. Shenoy, however, admitted that it is not the case and that he never told Holzen it was. (Ex. 20 (Shenoy Dep.) at 37:8 – 38:8; 43:20 – 44:3.)  Holzen, therefore, has no basis for his incorrect assumptions or for failing

to apportion his proposed rate based upon actual potentially infringing synchronizations performed by users with Storage Sync (or any of the Accused Products).  (*See* Ex. 15 (Holzen Report) ¶ 181.)

Similarly, Holzen's analysis under Factor 11 is devoid of any apportionment.  He names Factor 11 as "The Extent to Which the Infringer Has Made Use of the Invention and Any Evidence Probative of the Value of That Use" but never discusses the elements of the claimed inventions of the Asserted Claims versus the functionality of the Accused Products, any actual use of the Accused Products by Egnyte's users that actually infringes the Asserted Claims, or any evidence at all related to this usage factor.  (Ex. 15 (Holzen Report) ¶¶ 182-196.) Instead, Holzen merely reiterates his overly inflated user figures from his royalty base counting and never discusses what those users do or do not do with the Accused Products relative to the Asserted Claims.  (*Id.*)  As a result, there is no apportionment done in the Factor 11 analysis.  (*Id.*)

At his deposition, Holzen conceded that he performs no apportionment in analyzing Factors 9, 10 or 11, but initially claimed that he did so in his application of Georgia Pacific Factor 13.  (Ex. 21 (Holzen Dep.) at 72:11 – 73:3.)  Holzen terms Factor 13 as "The Portion of the Realizable Profit That Should Be Credited to the Invention As Distinguished From Non-Patented Elements, The Manufacturing Process, Business Risks, Or Significant Features Or Improvements Added By the Infringer". (Ex. 15 (Holzen Report) at pp. 83-84.) However, as discussed above, Holzen never conducts any analysis or discussion under this factor about non-patented and patented uses of the Accused Products.  (*Id.* at ¶¶ 199-225.)   Holzen acknowledges that Factor 13 requires an assessment of the portion of profits or revenue from the Accused Products that derives from the Asserted Claims, but he concedes during deposition that his analysis applying Factor 13 makes no effort to apportion the value of the Accused Products relative to the Asserted Claims, or the revenue or profits derived therefrom, based upon any analysis of the value of the alleged

14

functionality and usage of the Accused Products versus any admitted non-infringing usage and functionality of the Accused Products. (Ex. 21 (Holzen Dep.) at 99:13 – 101:13.)   The only adjustment Holzen makes to the royalty rate is to determine the value of Storage Sync as a whole (*i.e.,* all functionality of the product regardless of whether or not it infringes any Asserted Claims) versus any other products or services offered by Egnyte in any of its basic plans. (*Id.* at 117:14 – 118:10; Ex. 15 (Holzen Report) ¶¶ 199-225.)   Holzen does no apportionment related to the Asserted Claims and how the Accused Products are used.  (Ex. 15 (Holzen Report) ¶¶ 199-225.)

As a result, Holzen's entire *Georgia-Pacific* royalty rate analysis and opinions lack any apportionment relative to what the Asserted Patents actually claim as infringing.  (*See generally* Holzen Report.)

### H.    Holzen Continues To Refuse To Consider Actual Usage Data Provided By Egnyte And Its Expert Mr. Pinsonneault Showing That An Extremely Few Number Of Synchronizations Using The Accused Products Could Possibly Infringe the Asserted Claims.

In response to criticism of his failure to apportion the value of Storage Sync or any of the Accused Products for any possible acts of infringement, Holzen contends that he can make up for his failure on the back end of his estimated damages by using a lower profit percentage.   (Ex. 21 (Holzen Dep.) at 79:17 – 83:11; Ex. 15 (Holzen Report) ¶ 216.)  He claims that this is the only way he could possibly apportion for actual potential infringement because he did not have any usage data:

Q:  And you did that because, at the time of your report, you didn't have actual counts or data from Egnyte saying, here's the number of times our users actually utilize any of those four modules in a way that could be considered to be infringing?

A:  That's right. I did not have access to that kind of data.

15

(Ex. 21 (Holzen Dep.) at 83:12-19.) Holzen testified that if such actual data was available to him, he would revise his analysis. (*Id.* at 83:20 – 84:6.) Holzen's excuse however does not make sense because he had usage data when Egnyte's damages expert submitted his rebuttal report. After receiving Topia's Supplementation to Final Infringement Contentions and Holzen's damages report charging a royalty for every user of Egnyte's Accused Products and for all functionality of the Accused Products, Egnyte's damages expert Gregory Pinsonneault asked Egnyte if it could search through every transaction done by Egnyte's systems to research actual usage of the Accused Products that could possibly infringe the Asserted Patents in the way now explained by Shenoy for the first time in his supplemental infringement report.[5] (Ex. 16 (Pinsonneault Report) ¶ 96.) After receiving the research from Egnyte and discussing the research with Egnyte and Egnyte's technical expert Dr. Wolfe to ensure that the research was accurate, Pinsonneault presented the results of the research in his rebuttal report. (*Id.* ¶¶ 96-102, Schedule 1.1.) This investigation shows that ███████████████████ of all Egnyte's users could possibly infringe Topia's Asserted Claims during the relevant time period of the alleged infringement, which accounts for ████████ customer files out of the ████████ total number of customer files hosted by Egnyte during the relevant time period. Holzen refused to consider any of this research in his reply report for apportionment and also refused to consider the total number of users of Storage Sync presented in the report. (*Compare generally* Ex. 15 (Holzen Report) *with* Ex. 16 (Pinsonneault Report).)

---

[5] Previous reports from Shenoy and Holzen and pleadings from Topia identified different Egnyte Products as the "Accused Products" and infringement theories. Their supplemental reports removed many of the products Topia and its experts had previously identified as accused products and finally identified for the first time how they contend Egnyte allegedly infringes the Asserted Patents.

Confronted with this actual usage data in the Pinsonneault Report showing how rarely any synchronizations could possibly infringe Topia's claimed synchronization and how few users have access to Storage Sync, Holzen decided to simply ignore the data. (Ex. 17 (Holzen Reply Report) ¶¶ 34-38; Ex. 21 (Holzen Dep.) at 121:16 – 122:12.) Instead of considering the data and providing a potential damage award for Topia using the data, he postulates hypothetical issues with the usage data to generate excuses for him not considering it all. (Ex. 17 (Holzen Reply Report) ¶¶ 34-38; Ex. 21 (Holzen Dep.) at 122:13 – 125:2; 158:22 – 164:22; 195:21 – 202:9.) As a result, Holzen continues to opine for an overly inflated damages award untethered to the Asserted Claims or any possible actual usage of Topia's inventions by the users of the Accused Products. (*See generally* Ex. 17 (Holzen Reply Report).)

## IV.    ARGUMENT

### A.    Damages Opinions And Testimony That Fails To Properly Apportion For The Value Attributable To The Asserted Claims Is Unreliable And Should Be Excluded From Trial To Avoid Jury Confusion.

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony. Expert testimony is admissible only if it "is based on sufficient facts or data," "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d); *see generally Elcock v. Kmart Corp.*, 233 F.3d 734, 741–46 (3d Cir. 2000). "[T]he language of Rule 702 requiring the expert to testify to scientific knowledge means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3rd Cir. 1994) (quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590 (1993)). The proponent of the expert testimony has the burden of establishing its admissibility by a preponderance of the evidence. *Padillas v. Stork–Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir.1999).

17

As this Court has acknowledged, expert opinions that are contrary to law are inadmissible under Fed. R. Evid. 702. *See, e.g., Koninklijke Philips N.V. v. Telit IoT Sols., Inc*., Civil Action No. 20-1708-CFC, 2023 WL 8600662, at *1 (D. Del. Dec. 12, 2023) ("Testimony that is contrary to the law is not admissible under Rule 702."); *Minerva Surgical, Inc. v. Hologic, Inc*., C.A. No. 18-00217-JFB-SRF, 2021 WL 3048447, at *6 (D. Del. July 20, 2021) ("An expert's opinion that applies a legally erroneous or irrelevant analysis is inadmissible."). This standard requires the exclusion of expert opinions contrary to Federal Circuit patent law precedent. *See Hebert v. Lisle Corp*., 99 F.3d 1109, 1117 (Fed. Cir. 1996); *see also GlaxoSmithKline LLC v. Glenmark Pharms. Inc*., Civil Action No. 14- 877-LPS-CJB, 2017 WL 8948975, at *7 n.6 (D. Del. May 30, 2017); *Baxalta Inc. v. Bayer Health, LLC*, 513 F. Supp. 3d 426, 448 (D. Del. 2021).

Black-letter Federal Circuit precedent requires that "[a] patentee is only entitled to a reasonable royalty attributable to the infringing features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). This requires that "royalties be apportioned between infringing and non-infringing features of the accused product." *Power Integrations*, 904 F.3d at 977. An apportionment analysis generally involves applying a royalty rate to a royalty base. *Id.* For multi-component products, the royalty base must be based on the "smallest salable patent-practicing unit." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). The patentee must then apportion further "where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature …" to come to the actual value attributable to the patented features claimed. *Virtnetx, Inc. v. Cisco Sys., Inc.,* 767 F.3d 1308, 1327-28 (Fed. Cir. 2014) (overturning verdict for failing to instruct to apportion to the actual value attributable to the patented claims). The "ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing

features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.,* 773 F.3d 1201(Fed. Cir. 2014) (*citing Virnetx,* 767 F.3d at 1326 *and Garretson v. Clark*, 111 U.S. 120, 121 (1884)).

### B.    Holzen Fails To Apportion His Damages Analysis To Reflect That The Accused Products Have Many Functionalities Apart From Syncing At All.

As detailed above, in his analysis and opinions Holzen apportions neither the royalty base nor the royalty rate of the Accused Products to account for and remove value for their functionality apart from synchronizing files at all.  Holzen includes in his royalty base all users regardless of whether they ever use the product to synchronize files and regardless of whether or not they actually have access to Storage Sync at all.  (Ex. 21 (Holzen Dep.) at 57:16 – 62:21; Ex. 15 (Holzen Report) ¶¶ 121-123.)  Holzen fails to do so despite Topia's own technical expert repeatedly admitting that both sets of Accused Products – Desktop App and Storage Sync – have multiple uses and provide users with many functionalities other than synching.  (*See, supra,* Factual and Procedural Background, § D.)

Likewise in his analysis calculating a proposed royalty rate, Holzen fails to apportion for non-infringing functionality other than delta sync.  (*See* Ex. 15 (Holzen Report) at ¶¶ 199-225.) He addresses apportionment in discussing Factor 13 of *Georgia-Pacific*, (*see id.*), but concedes he makes no effort to apportion the value of the Accused Products relative to the Asserted Claims between infringing and non-infringing functionality, (Ex. 21 (Holzen Dep.) at 99:13 – 101:13). He employs two approaches under Factor 13, a "Pricing Differential Approach", (*see* Ex. 15 (Holzen Report) at ¶¶ 202-218), and a "Listed Price Approach", (*id.* at ¶¶ 219-225). In both, he starts with the full value of the Storage Sync product and never reduces or apportions it based upon its functionalities related to syncing versus non-syncing uses.  (*See id.* at ¶¶ 202-225.) The only adjustment Holzen makes to the royalty rate is to determine the value of Storage Sync as a software

module apart from the other products or services offered by Egnyte in its basic plans. (*Id.* at 117:14 – 118:10; Ex. 15 (Holzen Report) ¶¶ 199-225.)

As a result of his failure to separate, in either the royalty base or royalty rate or both, the value of Storage Synch related to synching as opposed to non-synching functionality, Holzen fails at an initial level to apportion "between infringing and non-infringing features of the accused product." *Power Integr.*, 904 F.3d at 977. His analysis is contrary to law, therefore unreliable, and should be excluded. *See, e.g.*, *Hebert*, 99 F.3d at 1117; *Baxalta*, 513 F. Supp.3d at 448.

### C.    Holzen Fails To Further Apportion His Damages Analysis To Reflect That The Accused Products Perform Forms Of Syncing Not Covered By The Asserted Claims.

Even if Holzen had apportioned the value of Storage Synch down to the value of its synching features, that would still not be sufficient apportionment to render his opinions legally viable and admissible. As this Court has found, the Asserted Claims do not cover all synchronization of computer files or even all full file synchronization, but instead cover a "'specific way to synchronize' such full files." *See* D.I. 106 at 7 *and* (Ex. 31 (Discovery Dispute Hearing Tr.) pp. 6-7). Ignoring this reality, Holzen includes in his royalty base all users who have a copy of, or access to, any of the Accused Products regardless of whether they use the products to synchronize files as covered by the Asserted Claims. (Ex. 21 (Holzen Dep.) at 57:16 – 62:21; Ex. 15 (Holzen Report) ¶¶ 121-123.) He then fails to apportion in his royalty rate calculation the value of Storage Sync between types of alleged infringing and admitted non-infringing synchronizations. (*See* Ex. 15 (Holzen Report) at ¶¶ 199-225; Ex. 21 (Holzen Dep.) at 99:13 – 101:13.)

Given that Storage Sync is a smallest salable unit that is "in fact, a multi-component product containing several non-infringing features with no relation to the patented feature …", Holzen's failure to apportion down to the actual value attributable to the patented features (the

claimed specific type of synching) results in a potential damage award that is completely unreasonable under the law and far greater than Topia could ever be entitled. *See Virtnetx, Inc. v. Cisco Sys., Inc.,* 767 F.3d 1308, 1327-28 (Fed. Cir. 2014) (overturning verdict for failing to instruct to apportion to the actual value attributable to the patented claims). Holzen's "ultimate combination of royalty base and royalty rate" fails to "reflect the value attributable to the infringing features of the product, and no more", and, therefore, must be excluded. *See Ericsson,* 773 F.3d 1201; *Virnetx,* 767 F.3d at 1326; *Garretson v. Clark*, 111 U.S. 120, 121 (1884); Fed. R. Evid. 702.

### D. Mr. Holzen Only Conducted An Analysis And Calculation For Storage Sync And Provides No Reliable Basis Or Principles To Apply The Same Calculation To Desktop App.

Topia accuses two set of products – Desktop App and Storage Synch. (Ex. 10 (Shenoy Report), ¶129; Ex. 15 (Holzen Report, ¶ 61).) Desktop App is included in all subscription plans, while Storage Sync is only provided to a limited number of enterprises. (Ex. 11 (Wolfe Report ¶ 127).) Despite accusing two separate sets of products, Holzen only conducts an analysis for Storage Sync and no analysis for Desktop App. (Ex. 15 (Holzen Report) ¶¶ 199-225; Ex. 17 (Holzen Reply Report) ¶55.) Holzen assumes that Storage Sync and its value is representative of Desktop App even though both Accused Products operate differently and have different accused functionality that is not present in the other product. (*Compare* Ex. 15 (Holzen Report) ¶225 *and* Ex. 17 (Holzen Reply Report) ¶55 *with, supra,* Factual and Procedural Background, § D.) Holzen conducts no analysis of Desktop App, ignores what functionality and usage of Desktop App could possibly infringe the Asserted Claims, and apportions none of Desktop App's value. (Ex. 15 (Holzen Report) ¶¶ 199-225; Ex. 17 (Holzen Reply Report) ¶55.) Holzen's cursory and unsupported opinions as to Desktop App, therefore, are unreliable and should be excluded. *See Ericsson,* 773 F.3d 1201; *Virnetx,* 767 F.3d at 1326; *Garretson v. Clark*, 111 U.S. 120, 121 (1884); Fed. R. Evid. 702.

21

## V.    CONCLUSION

For these reasons, Holzen's damages opinions are not more likely than not to help the Jury understand the evidence or determine a fact in issue, namely the proper measure of any reasonable royalty for any damages owed in this case.  His expected testimony is not based on sufficient facts or data, is not the product of reliable principles and methods, and does not reflect a reliable application of such principles and methods to the facts of this case.  Instead, if allowed to testify, his opinions are more likely than not to confuse and mislead the Jury.  As a result, the Court should exclude Holtzen's testimony from trial under Fed. R. Evid. 702.

Pierson Ferdinand LLP

*/s/ Carl D. Neff*
Carl D. Neff (No. 4895)
CSC Station
112 S. French Street
Wilmington, Delaware 19801
Telephone: (302) 482-4244
carl.neff@pierferd.com

*Attorneys for Defendant Egnyte, Inc.*

*Of Counsel:*

Ryan T. Beard (pro hac vice)
2021 Guadalupe Street, Suite 260
Austin, Texas 78705
512-577-2673
ryan.beard@pierfered.com

Christopher R. Kinkade (pro hac vice)
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
609-415-0101
christopher.kinkade@pierferd.com

Armon Shahdadi *(pro hac vice)*
260 Peachtree Street NW
Suite 2200
Atlanta, GA 30303
470.657.9784

22

armon.shahdadi@pierferd.com

John T. Gutkoski *(pro hac vice)*
101 Federal Street, Suite 1900
Boston, MA 02110
Tel: (978) 775-2681
john.gutkoski@pierferd.com

Dated:  January 21, 2025